FILED
SUPERIOR COURT
OF GUAM

2021 DEC 14 PM 4: 40

CLERK OF COURT
By:_____

**IN THE SUPERIOR COURT OF GUAM**

**HAGÅTÑA, GUAM**

|  |  |
|---|---|
| **PEOPLE OF GUAM** | )   Criminal Case No. CF0139-20 |
| | ) |
| | ) |
| | )   **DECISION AND ORDER** |
| vs. | )   **DEFENDANT'S MOTION TO** |
| | )   **SUPPRESS PHYSICAL EVIDENCE** |
| **RHIANNON MARIE TORRES BLAS,** | )   **AND STATEMENTS** |
| | ) |
| Defendant. | ) |
| ——————————————————— ) | |

## INTRODUCTION

This matter came before the Honorable Alberto E. Tolentino on September 21, 2021, for an evidentiary hearing on Defendant Rhiannon Marie Torres Blas's Motion to Suppress Physical Evidence and Statements ("Motion to Suppress"). Defendant was represented by Brycen J. Breazeale, Assistant Alternate Public Defender. Assistant Attorney General Katherine M. Nepton appeared for the People of Guam. The Court took the matter under advisement and having duly considered the parties' briefs, testimony of witnesses, oral arguments and the applicable law, the Court now issues this Decision and Order **GRANTING** the Defendant's Motion to Suppress.

## BACKGROUND

Defendant is charged with the Possession of a Schedule II Controlled Substance (as a Third Degree Felony) and three counts of Theft of Property (as a Misdemeanor). Indictment Mar. 5, 2020). On December 17, 2020, the instant Motion to Suppress was filed and an order sought from the Court suppressing the verbal statements—as well as all physical evidence—finding that

Guam Police Department ("GPD") illegally seized the evidence. Def. Blas' Mot. to Suppress Physical Evidence and Statements, Dec. 17, 2020 (hereinafter "Def.'s Mot.). The People filed an Opposition to the Motion to Suppress. People's Opp. to Def.'s Mot. to Suppress Physical Evidence and Statement, Dec. 31, 2020 (hereinafter "People's Opp."). The Defendant filed her reply to the People's opposition. Def. Blas' Reply to Gov.'s Opp. to Def. Blas' Mot. to Suppress Physical Evidence and Statements, Jan. 7, 2021. The Court held an evidentiary hearing on the motion on September 21, 2021. Minute Entry, Sept. 21, 2021.

In her motion, Defendant argues that the Officers never had reasonable suspicion or probable cause to believe she had committed any crime and, consequently, the stop Officers conducted and her placement within the police cruiser was illegal. Def.'s Mot. at 5–8. Defendant continues that since there was no probable cause or even a reasonable suspicion that she had committed a crime, the first search of her bag was also illegal. *Id.* Additionally, Defendant alleges the second search of her bag was illegal because under the circumstances— which included the presence of multiple officers at the scene and her placement in a locked vehicle— she did not freely and voluntarily consent to the search. *Id.* Thus, any evidence of the items found within the bag should also be suppressed. *Id.*

The People respond reasonable suspicion that a crime was committed supports that the initial search and seizure of the Defendant. People's Opp. at 5–9. Further, they argue that Officers did not arrest Defendant when they initially placed her in the police cruiser. *Id.* Rather, she requested the Officers transport her to another location. *Id.* The initial search of her bag, which was undisputedly consented to, was for the safety of the officers and Defendant. *Id.* The People also assert that upon finding a glass pipe and a re-sealable plastic bag containing suspected methamphetamines in the vehicle, the Officers informed Defendant of the discovery and advised her of her constitutional rights, which she acknowledged. *Id.* The Officers then

asked Defendant a second time to consent to a search of her bag, and she agreed. *Id.* Her bag contained contraband, including three fabricated glass pipes containing a white powdery residue, a blue transparent re-sealable bag containing a white powdery crystalline rock type substance suspected to be methamphetamine, and several credit/debit cards belonging to other people. *Id.* Thus, there was no violation of Defendant's rights under the Fourth or Fifth Amendments and that the Court should not suppress the evidence and statements. *Id.*

## FINDINGS OF FACT

On September 21, 2021, the Court conducted an evidentiary hearing on the motion. Minute Entry, Sept. 21, 2021. GPD Officer I Richard Wright and Officer II Jesse Mendiola were the only witnesses called by the People. Digital Recording at 9:54:34–11:09:02. Defendant did not call any witnesses. *Id.* From the testimony received from these witnesses the Court finds:

On February 25, 2020, GPD Officers Mendiola, Mantanona, and Wright responded to a call of a verbal disturbance occurring along Route 1 in Anigua, Guam. *Id.* Officer Mendiola testified that he saw the Defendant walking towards the GCIC building from the Adelup area on the shoulder of Route 1. *Id.* He observed a vehicle following Defendant. *Id.* The Officers identified the operator of the vehicle as an individual named Carlos Salas ("Mr. Salas"). *Id.* The officers executed a traffic stop of the vehicle on the roadway and Officer Mantanona proceeded to speak to Mr. Salas after he exited the vehicle. *Id.* Mr. Salas informed Officer Mantanona that he and his girlfriend, Defendant, were having an argument. *Id.*

Meanwhile, Officer Mendiola approached Defendant and generally inquired if everybody was "OK," if anybody was hurt, and if Defendant needed help. *Id.* Defendant asked Officer Mendiola for a ride to Chode Mart, which was about a one or two minute drive away. *Id.* Officer Mendiola agreed to give Defendant a ride, but did not want to leave his partner alone at the scene, so he placed Defendant in the police cruiser. *Id.* For officer safety, Officer Mendiola

asked for consent to search Defendant's bag. *Id.* Defendant opened her bag but quickly closed it. *Id.* Officer Mendiola testified he did not really get to see inside the bag. *Id.* Officer Mendiola then placed Defendant in the right rear passenger seat of the police cruiser. *Id.* Officer Mendiola did not handcuff Defendant at the time; he stated the original plan was to secure the vehicle and transport the Defendant to the store. *Id.*

At some point, Officer Mantanona obtained Defendant's consent to search the vehicle after Officer Wright informed Officer Mantanona that there was a pungent odor emitting from the car. *Id.* Officers obtained consent from Defendant and not Mr. Salas because the vehicle was a rental car in Defendant's name. *Id.* A search of the vehicle revealed a glass pipe and a re-sealable bag containing suspected methamphetamines. *Id.* Officer Mendiola informed Defendant about the result of the search. *Id.* Then, he verbally advised Defendant of her constitutional rights via a rights card. *Id.* Defendant responded by saying, "why can't he just man up to his own shit." *Id.* Officer Mendiola sought and obtained consent from Defendant to search her bag a second time. *Id.* Defendant emptied the contents of the bag atop the trunk, which included a driver's license, substantial amount of cash, improvised glass pipes, and some re-sealable baggies, including one baggie that contained suspected methamphetamine. *Id.* At that point she was not placed under arrest. *Id.* However, she was arrested following an interview at the precinct. *Id.* The Officers asked her to go with them to the precinct for further investigation following the search of her bag and she said "OK." *Id.*

The People allege at the GPD precinct, Officer Mendiola placed Defendant in an interview room and re-advised Defendant of her rights via a GPD *Miranda* Form. People's Opp. at 4. Defendant acknowledged her rights and signed the waiver of rights portion of the form. *Id.* After waiving her rights, Defendant said, "So I don't have to answer the questions I don't want to, right?" Because I don't want to get anyone in trouble." *Id.* at 4–5. Officer Mendiola reminded

Defendant of her rights, as well as her previous acknowledgement and understanding of those rights. *Id.* at 5. Officer Mendiola then conducted an interview, during which Defendant provided a verbal statement. *Id.*

## DISCUSSION

The Fourth Amendment protects against unreasonable searches and seizures and is made applicable to Guam via section 1421b(c) of the Organic Act of Guam. *See People v. Johnson*, 1997 Guam 9, ¶ 4. "The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular government invasion of a citizen's personal security.'" *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09, 98 S.Ct. 330, 332 (1977) (quoting *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968)). Every search or seizure must be reasonable under the circumstances to pass muster under the Fourth Amendment. *See Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772 (1996).

### A. The initial stop and first search of Defendant's bag was a valid *Terry* stop.

The Court's analysis begins with a determination of the Defendant's initial interaction with GPD. "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such question." *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324 (1983) (citation omitted). "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S.1, 19 n.16, 88 S.Ct. 1868, 1878 (1968). "In order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to

determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. That rule applies to encounters that take place on a city street or in an airport lobby, and it applies equally to encounters on a bus." *Florida v. Bostick*, 501 U.S. 429, 439-440, 111 S.Ct. 2382, 2389, 115 L.Ed.2d 389 (1991).

The facts elucidated at the evidentiary hearing clearly indicate that the Officers' interests in Defendant and the vehicle were relative to the investigation of a reported verbal altercation. The Officers found Defendant in the location described in the report made to GPD of a verbal altercation. Digital Recording at 9:54:34–11:09:02. Officer Mendiola testified at that time of the initial encounter Defendant was not free to leave because GPD takes matters of potential domestic violence very seriously, and he wanted to investigate the situation. *Id.* As Officer Mendiola stated that Defendant was not free to leave once the Officers arrived on the scene, the Court finds the Officers seized Defendant in a *Terry* stop. Defendant argues this seizure was illegal because GPD Officers had no suspicion that Defendant was engaged in criminal activity. Def.'s Mot. at 5. Yet, Defendant was in the location of an alleged verbal altercation and Mr. Salas was following her in a vehicle, as described in the initial report to GPD. She also informed Officer Mendiola that she and Mr. Salas were fighting, and asked Officer Mendiola for a ride to Chode Mart. Digital Recording at 9:54:34–11:09:02. When evaluating the surrounding circumstances of Defendant's initial encounter with the Officers, the Court finds they had reasonable suspicion to seize Defendant in order to investigate the alleged verbal altercation and ensure that Defendant was safe. Accordingly, GPD officers conducted a valid *Terry* stop when they first stopped Defendant.

**B. The first search of Defendant's bag was valid because Officer Mendiola obtained consent.**

A search or seizure made without a warrant is presumed to be unreasonable. *See Pennsylvania v. Strickler*, 757 A.2d 884, 888 (Pa. 2000) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973)). In the absence of a warrant, the police may lawfully conduct a search or seizure only if an exception to the warrant requirement applies. *See id.*; *see generally United States v. Woodrum*, 202 F.3d 1, *6 (1st Cir. 2000) (recognizing that reasonable suspicion of criminal activity and voluntary consent are two situations which justify the seizure of the person in an automobile absent a warrant) (citations omitted). Voluntary consent is a recognized exception to the warrant requirement. *See People v. Santos*, 1999 Guam 1, ¶ 33 (citations omitted).

Officer Mendiola's first search of Defendant's bag occurred without a warrant. Digital Recording at 9:54:34–11:09:02. While a warrantless search is generally unreasonable, Officer Mendioloa testified that he obtained consent to search Defendant's bag prior to placing her in the police cruiser. *Id.* Officer Mendiola stated his request to search Defendant's bag stemmed from concerns about officer safety. *Id.* If Officer Mendiola was going to give Defendant a ride to Chode Market, he wanted to ensure he was not placing himself and his partner in danger. *Id.* Officer safety is a valid reason to request consent to search a person's possessions. Consequently, the Court finds that the first search of Defendant's bag was constitutionally valid.

Yet, the Court notes that the scope of consent for the first search ended after Officer Mendiola completed the search. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 252 (1991). A typical person would expect that consent to the search ended after Officer Mendiola finished checking the bag to ensure officer safety while transporting Defendant to Chode Market. Officer Mendiola did not find any weapons in

Defendant's bag when he searched it. Digital Recording at 9:54:34–11:09:02. The absence of a weapon in Defendant's bag should have dispelled any concerns Officer Mendiola had about officer safety. Similarly, the typical person would have understood consent for the search ended once the concerns about officer safety ended. Thus, the scope of the consent for the first search ended when Officer Mendiola completed the search.

### C. Defendant did not give knowing and voluntary consent for the second search of her bag.

#### 1. GPD Officers only requested consent to search Defendant's bag a second time because of the contraband discovered in the vehicle.

A search conducted without warrant is reasonable if the defendant voluntarily and knowingly consented to the search. *See generally Ohio v. Robinette*, 519 U.S. 33, 37–40. The Court determines whether the defendant voluntarily and knowingly consented by evaluating the totality of the circumstances, there is no per se rule. *See Schneckloth v. Bustmonte*, 412 U.S. 218, 227–246 (1973). An officer does not have to tell the defendant that he has the right to refuse consent for consent to be valid. *Id.*

The Court finds that the Officers' discovery of the contraband during the search of the vehicle prompted Officer Wright to ask Defendant for consent to search her bag a second time. Officer Wright admitted that initially there was no cause to believe that the Defendant committed any type of crime, and that it was only upon further investigation that the officers arrested both individuals. *Id.* Officer Mendiola had already searched Defendant's bag once for officer safety. *Id.* Therefore, it is apparent that it was the discovery of the drug paraphernalia, baggies, and stolen credit cards in the vehicle that motivated Officer Mendiola to search Defendant's bag a second time.

The Court is also unsure that Defendant consented to a search of the vehicle. Officer Wright stated that he himself never obtained consent from Defendant to search the vehicle;

although he insisted that Officer Mantanona informed him that Defendant consented to a search of the vehicle. *Id.* As this statement is hearsay, the Court gives it minimal weight. Officer Mantanona did not testify. *Id.* There is also no record of written consent. *Id.* Regardless, the lack of connection between Defendant and the vehicle precludes any probable cause to search Defendant's bag.

The Court finds few facts linking Defendant to the vehicle. Officer Mendiola testified that Defendant was about eight to fifteen feet away from the vehicle when he arrived at the scene. *Id.* Officer Wright testified that he never saw Defendant inside the vehicle. *Id.* Officer Mendiola stated that at some point GPD called the rental company and verified that Defendant rented the vehicle in her name, but it is unclear if this call occurred before or after searching the vehicle. *Id.* The vehicle was not registered in Defendant's name. *Id.* Absent Mr. Salas' statement to the Officers that the rental vehicle was in Defendant's name, there is nothing connecting Defendant to the vehicle before the search. *Id.* Without a stronger connection between Defendant and the vehicle, and without any other reasonable suspicion that Defendant had contraband in her purse, there was no reason to ask Defendant to search her bag a second time.

Officer Mendiola testified that following the discovery of the contraband in the vehicle, Defendant was not free to leave. *Id.* He further testified that if she had tried to leave, he would have arrested her. *Id.* It was after the search of the vehicle that Officer Mendiola asked to search Defendant's bag a second time. *Id.* Therefore, the Court finds that following the discovery of the contraband in the vehicle, the Officers unlawfully detained Defendant.

While unlawfully detaining her, Officer Wright asked for verbal consent to search her bag a second time. *Id.* It is not clear if Defendant gave consent for the second search. Defendant alleges that the Officers ordered her to allow them to search her bag, while the People allege that the Officers read her the constitutional rights card and then asked to search her bag. *Id.* The

evidentiary hearing did not offer clarity on this point; Officer Mendiola testified that when he asked to search Defendant's bag a second time she said, "why doesn't he own up to his shit." *Id.* He did not obtain written consent, but he states that she agreed to the search. *Id.* Nevertheless, reading Defendant her constitutional rights does not ensure knowing and voluntary consent.

Officer Mendiola states that Defendant was outside of the vehicle when he obtained consent to search her bag. *Id.* Even so, immediately prior to consenting to a search of her bag, Defendant was locked inside the police cruiser. *Id.* The People argue that it was Defendant's choice to get inside of the locked police cruiser because she requested a ride to Chode Market, and so she was free to leave. *Id.* Her reasons for entering the police cruiser do not change the fact that she was locked inside of the car; she could not exit freely because the doors do not open from the inside. Likewise, while she was outside of the vehicle when she gave consent for Officer Mendiola to search her bag a second time, Officer Mendiola ordered her out of the vehicle; she did not freely exit the police cruiser. *Id.* The testimony suggests that Officer Mendiola ordered Defendant out of the police cruiser after finding the contraband in the vehicle. *Id.* He also stated that Defendant was no longer free to leave after the discovery of the contraband. *Id.* Accordingly, it seems that Defendant was inside of a locked police cruiser, then ordered to exit the vehicle—at which point she was no longer free to leave the encounter. These facts illustrate that the Officers detained Defendant prior to asking for her consent. Once she was outside of the vehicle, Officer Mendiola would have arrested her if she tried to leave the scene. Thus, she was not free to leave. She was in custody for the contraband in the vehicle, which the Officers did not have evidence belonged to Defendant.

Given that GPD unlawfully detained Defendant, few facts link her to the vehicle, and Officer Mendiola had already searched her bag one time, the Court finds that Defendant's consent—if she even gave consent—was not given knowingly and voluntarily. In addition,

without any facts placing Defendant in the vehicle, there was no probable cause to search Defendant based on the contraband found in the vehicle. Therefore, the second search of Defendant's bag was unlawful and the Court orders the items found during the second search suppressed.

## 2. The remedy for an unlawful search is exclusion of the evidence at trial.

The exclusionary rule bars the prosecution from using evidence at trial that the government obtained through a violation of the Fourth Amendment. *U.S. v. Shetler*, 665 F.3d 1150, 1156–57 (9th Cir. 2011) (citing *Wong Sun v. U.S.*, 371 U.S. 471, 484–85 (1963)). The goal of the rule is to deter violations of the Fourth Amendment, including unreasonable searches and seizures. *Id.*

Therefore, because the Court finds the Officers discovered the driver's license, a substantial amount of cash, improvised glass pipes, re-sealable baggies, and suspected methamphetamines during an unconstitutional search of Defendant's bag, the exclusionary rule operates to suppress such items from use against Defendant at trial.

## D. Under the fruit of the poisonous tree doctrine, the statements Defendant made during the interrogation are the product of the Fourth Amendment violation.

Evidence, including verbal statements, gathered as a direct result of an unlawful search is "fruit of the poisonous tree" and is inadmissible. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963); *People v. Cundiff*, 2006 Guam 12 ¶ 41. Before suppressing evidence as a fruit of the poisonous tree, the Court must determine if the People obtained the challenged evidence because of police exploitation of the initial illegality. *People v. Cundiff*, 2006 Guam 12 ¶ 41 (citing *Segura v. United States*, 468 U.S. 796, 804–05 (1984)). If the police arrived at the evidence by independent means, then the independent means purge the taint. *Id.* The People have the burden to "break the casual connection" between the unlawful search and the evidence that the Defendant alleges fruit of the poisonous tree. *People v. Cundiff*, 2006 Guam 12 ¶ 41.

Following the discovery of the contraband in the vehicle and Defendant's purse, Officer Mendiola asked Defendant to answer questions at the GPD precinct. Digital Recording at 1:04:21–1:24:13. She agreed, and made incriminating statements during the interrogation at the GPD precinct. *Id.* Officer Mendiola would not have requested that she answer questions at the GPD precinct if the unlawful search had not occurred. Officer Mendiola specifically stated that there was no evidence of illegal activity until the search of the vehicle. Absent the searches, GPD would have transported Defendant to Chode market and there would have been no reason to bring her to the GPD precinct for interrogation. Consequently, the only reason GPD Officers interrogated Defendant was because of the illegal search. The Court orders Defendant's statements made during interrogation suppressed in accordance with the exclusionary rule.

## CONCLUSION

Based on the foregoing, Defendant's Motion to Suppress is hereby **GRANTED**.

SO ORDERED this __14__ day of December, 2021.


**HONORABLE ALBERTO E. TOLENTINO**
**Judge,**
**SUPERIOR COURT OF GUAM**